Good morning, Your Honors. May it please the Court, Devin Versteen, on behalf of Mr. Wilson. Your Honors, as the Supreme Court clearly stated in Hinton v. Alabama, criminal cases will arise where the only reasonable and available defense strategy requires consultation with experts for introduction of expert evidence. That is this case. At the time of the suppression hearing in State Court, given the cutting-edge technology at issue, the request from the for failing to obtain a computer forensics expert. It was not a tactical decision and fell below the standard for competent representation. Moreover, with an expert, there was a reasonable probability that the Court would have granted the suppression motion because it would have found, as it should have found, a significant expansion. Accordingly, we meet both prongs of the Strickland test, and this Court should reverse. The clearly established federal law here is beyond dispute. It begins with Strickland and ends with Kimmelman. Strickland, of course, sets forth the familiar two-prong test for ineffective assistance of counsel, and then the Supreme Court's decision in Kimmelman applies that when the basis for ineffective amendment claim. Turning first, then, to the first prong, beginning with deficiency. This is what counsel candidly admits in his declaration. His admissions themselves are uncontested. Quote, I did not have the personal expertise in computer forensics to discuss hashing technology. I was aware that the state would call an expert. I had no tactical reason to not have expert assistance at the suppression hearing. I should have had one. Now, that statement, in and of itself, is borne out by what happened at the suppression hearing. We have counsel's, I'll use the term muddled, cross-examination of the state's expert, which really went nowhere. I mean, there's a line, and I chuckle to myself every time I read it about the tomato plant, you know, where the expert's going, I don't know what you're talking about, sir. Like, if you say a thing is a tomato plant, you're not a tomato plant. And then counsel's forced to basically concede, maybe I'm not understanding. That's the quote. And respectfully, there was no maybe about it. He didn't get it. We also know that it was deficient because the proper evidence, the scientifically accurate evidence, didn't get before the deciding court, the superior court in that case. And that brings us with deficiency established straight to the prejudice prong. And I think really that's the crux of the matter here, if we're looking at it candidly. So what Kimmelman says, the Supreme Whether the fourth is, when you look at prejudice under Strickland, based on the Fourth Amendment claim, the question is, quote, whether the Fourth Amendment claim is meritorious and there is a reasonable probability that the verdict would have been different absent the excludable evidence. We know the answer is yes. We know it many different ways. But certainly, we know that it's meritorious based on this court's analysis in Wilson. Right. The federal counterpart to this state case. And just to step back, I mean, I think the court's well aware, right, this single search resulted in both cases. There's not two different searches. It's the identical search. So we know that from Wilson, there was a significant expansion. What's clear is that the evidence for the superior court to find that significant expansion didn't get into the record. But didn't the DHS expert essentially say the same thing that your expert would have testified? No, not at all. I mean, that's where the district court's main error is. I mean, he testified that you can, without looking at the image, look, there's digital images, you see it. But then if you look underneath, you could use binary zero one numbers or hexadecimals, whatever it is. And each one has unique numbers. And I think that's what the agent testified was. You don't have to look at it. We know what this is. This represents, I think he said it's virtually nil that different images would have the same hash value. I mean, it's kind of like DNA, right? You don't, you know, you wouldn't know personally. An expert says this is DNA. Someone's DNA is not the same as another person's DNA. And that's what seems like the DHS expert testified and said, look, we know by hash value that this thing is child pornography. You don't have to look at it. It is because the hash value, they're almost never identical. And this is what it is. And it seems like he testified to the same thing. And the difference here is maybe the, you know, the difficulty of applying, you know, the Fourth Amendment to this new FANGL technology. That's the difference. So the different results from our circuit here and the state court. So there's two answers to that. The first part of it is what the expert actually said, which was misleading, not misleading and intentionally misleading, but misled the California courts. The second part is not just what the expert said, but what was missing, right? So starting, I'll get to both. Starting with the quote at ER 236, the prosecutor asks, Google system goes and finds a picture that has the exact same digital fingerprint. And I can say, oh, well, that second picture is this child pornography that I just saw in picture A because they have the same hash values. And the expert answer is correct. That leaves the impression that somebody had seen the images in Mr. Wilson's files. And that's the basic problem that why you needed a defense expert, because that's what's not clear. What's not clear is that nobody had ever seen the images in Mr. Wilson's files. Somebody at some time, we don't know, saw some other files in some other images, but nobody saw what was in Mr. Wilson's files, right? It would be like in Walter. Somebody, some other time, saw some other films with similar markings, but nobody opened those films. But it had the same hashtag as a previously identified child pornography. And the agent says it's virtually nil that they would have the same. It's not just that. I agree with you on that. If someone tells me this has the same hash value as child pornography, I don't need to see it. I will accept it. You don't, but that's wrong. That's scientifically, objectively wrong. This court said why it's wrong, but that's the second part. Well, that's applying, you know, again, to this newfangled technology, how it is. But I mean, the agent testifies it's virtually nil that they would have the same digital hash if they're the same. But that's not enough. That's the problem. Yes, they have the same digital hash. Let's look at, and maybe this will be a better way to explain what I'm trying to say. If you look at the California appellate court's decision, right, on this, we don't have a reasoned decision to look through, but let's look through to that. This is what they say, quote, this is what they say based on the record before them as they understood the technology. Based on the assigned numerical values or digital fingerprints, they are representative of the contents depicted in the photographs themselves. The government gained no new material information by viewing that image. That's ER 1174 and 1175. That's just wrong. That's the impression that was left, was that the digital hash somehow let them know what the contents of the photo was. Yeah, but I mean, yes, for the digital hashtag, you don't know, is this a underage girl, underage boy? What, you know, what are they doing? Yes, we don't know that, but we do know it has the same hash value as a file that depicts child pornography. No, no, we don't. We know that it has the same hash value as a file that somebody thought may have fit the definition. That is a very different thing. Let's look at what this court has said about it. First, the government search exceeded, then I'm going to quote directly, first, the government search exceeded the scope of the antecedent private search because it allowed the government to learn new critical information that it used first to obtain a warrant and then to prosecute Wilson. I'm just going to pause. You can't hold up a hash value and say, ladies and gentlemen of the jury, one, two, three, X, Y, Z. But this is for probable cause, so we're not talking about the guilt phase here. We're saying the probable cause, right, for the search. That's what you're disputing. Well, we're not, no, because there was no warrant, so probable cause is irrelevant. Well, I mean, for the officer to look at, compare the two. Right. I understand. Keep going with the court. Second, this is really the key. That wasn't before the court also. Second, direct quote from Wilson, the government search also expanded the scope of the antecedent private search because the government agent viewed Wilson's email attachment even though no Google employee or other person had done so, thereby exceeding any earlier privacy intrusion. That's that second part. They looked at someone else's files. It wasn't that they looked at the same file. Roloff would have explained that and made that clear. If you go to what this court held in Wilson, the whole thing about these rights are personal rights, right? So if I go and read her version of Catcher of the Rye, it doesn't mean I can be a police officer and then go read your version of Catcher in the Rye in your library, right? These are personal rights. Roloff would have explained that key thing that nobody looked at the files in Wilson's thing. All somebody, we don't know who, we don't know when, we don't know where, we don't know under what circumstances, looked at somebody else's files. This has to be an expansion. It's by definition an expansion. That information never got before the deciding courts in California. Why? Because he didn't call an expert. He knew the state was going to have an expert. He knew he didn't know what he was talking about. And worst of all, he knew that in the district court, this court reversed in Wilson. So we know those things. I should have had an expert. This is one of the craziest things about this is it's in the record. Luke Wilson asked him for an expert. This was privately retained counsel, said get an expert. There's zero tactical reason. So then we're only in Kimmelman land. We're only in Kimmelman land and the only question for this is, is it meritorious? You know it's meritorious. Without that evidence, could it have had a different verdict? Of course. Because all of the digital evidence, every email message, all of it, all comes back to that search. So just specifically, what would the expert have said that the hashtag that was associated with the first child pornography was not part of Wilson's file? Right. And that you couldn't see who the individuals were by looking at the hashtag. Is that what the expert would have said? And more. And continuing. And what else specifically? Opening the file or set of files provides substantial additional information beyond its hash value to the observer. Right. In your brief, you said the ethnicity is the age of the people in the file. Anything beyond, obviously you can't see the picture, you just have a label, child pornography. So what else specifically would the expert have said? He would have talked about the fact that nobody saw the files. Okay. Nobody saw the files. And the first file that was labeled as child pornography, we don't know when it was labeled or by whom. And it wasn't Wilson's file. The hashtag on Wilson's file was identical. And we know that it probably means it's the same image. But nobody looked at the image. Is that what the expert would have said? Among other things. Okay. What other things? He would have talked also about the fact that it's impossible to determine whether a file is in fact child pornography without opening it, simply based on a hash match. That's at ER1222. Okay. But they know that the first hashtag was labeled child pornography and had the same hashtag. And there was testimony that it would be the same image. Would he say it isn't the same image? Your question is, would he say it wasn't the same file? It wasn't the same image. So the hashtag, if I'm understanding correctly, says the image is child pornography. The same hashtag is in Wilson's file. And so it must be child pornography. If the first one was labeled child pornography, then this one is child pornography. See, that's where we're taking, that's another place that the leap is happening. That's an unjustified leap. Because that's what I just quoted you, Judge Ikuda. Nobody can say, based on the first hash match, that it is in fact child pornography. But they know it's the same image, right? You just, would the expert have testified it wasn't the same image? The expert, same. The expert would have, I'm getting hung up on the word same. The expert would agree that the hash value indicates that it was, it was a, it's not the same file in the I think that's fair. Okay. We got there. Thank you. No, yes. Thank you. So, so basically, I mean, our position here is that, I mean, I'm happy to talk about any other issues. If the court has questions on notice or NAPU or any of the other things, but obviously we like to, it's a very unique circumstance to have a directly on point Ninth Circuit decision holding that this search is unconstitutional. And we see a bungled effort to make the same points in state court. We have concessions from trial counsel and massive consequences. So we think we easily meet the Strickland test as applied through Kimmelman. I'll save the rest of my time for rebuttal if there's no other questions. Thank you. Good morning. May it please the court, Alana Butler on behalf of respondent. First, we should just acknowledge the lens with which we are looking through this very issue, which is 2254. So in this instance, this issue was presented to the California Supreme Court, denied the issue in a silent denial on the merits. And as a result of that, the issue is framed as whether or not that denial was an unreasonable application or contrary to United States Supreme Court precedent. With respect to the state court's finding that counsel was not deficient as a result of not calling an expert, that decision was not objectively unreasonable. This wasn't a matter of confusion. There is a declaration that was submitted by Google that outlined the procedures for this very, very clearly. It indicated that when a known image of child pornography is viewed by somebody as a Google employee who is trained in federal standards for identifying child pornography, they assign that image a classification. And in this case, the classification that was assigned to this image was A1, which denoted that the image contained a prepubescent child engaging in sexual conduct. Once that designation is made, then it is run through a program that creates the hash value. And as the expert testified in this case, the hash value is akin to a fingerprint. And so once that value is stored in a depository, that gets run through all the types of attachments. And if that same hash value is found in a person's account, that means that that same exact image had been previously designated as child pornography. Now, with respect to what this additional expert might have supplied, as the district court found, it was merely cumulative because the evidence that presented at this hearing clearly showed that nobody was saying that another person looked at the image. There was no additional identifiers of the image. It was just that because A1 was a designation for this image that was given this fingerprint, when we find this fingerprint again, therefore, that means the image is A1. It is the exact same thing. Now, with respect to the assertion that, oh, if he had consulted an expert, the cross-examination would have been better, notably absent from the declarations that have been supplied by Mr. Wilson is any specific reference for what could have additionally been adduced during that cross-examination. And I will agree with my friend across the aisle that the examination was not exactly artful. And in my experience, when a witness says, I'm not trying to be difficult, that usually means that the witness is trying to be difficult. And there was a lot of back and forth with Mr. Boyce referring to a database, which would technically be a repository. And there was some miscommunications in that respect. But if we take a look at the evidence that was actually adduced from the expert witness on cross-examination, it's pretty much everything that is contained in the expert's declaration that was attached to the position. So, for example, on cross-examination, the expert testified the hash value has nothing to do with a description of the contents of the file. That's exactly what Mr. Roloff said. He further clarified, somebody makes a subjective determination that an image is child pornography, and then it is assigned a hash value. Again, that is the same thing that the expert would have testified to that Mr. Wilson has set forward. He also says a hash calculator does not determine the content of a file. A human determines whether it's child pornography. So when we look at what was adduced, it was pretty much the same thing as what the declaration indicated. Now, the declaration from Mr. Roloff does go into more detail. It says, well, you know, you can't tell who's in the picture, where the picture was, what the date and time of the picture was. But where the trial court in this instance interpreted the law to mean was that it was sufficient for the prosecution to know or the detective to know that this was just child pornography. Once it was identified as contraband, that was really the only thing that was important at that point. And what's interesting is we've talked about United States v. Wilson. There's a clear split in authority as to what this expansion really means. There are some courts that say, no, just the fact that we know that this is child pornography from the hash value, it's not a significant expansion if it's open. This court in Wilson, and I believe that there's another court that agreed with this court as well, said, no, you can tell more from the image because you're having somebody look at it in more detail. But that just comes down to a split of legal authority. That doesn't come down to what the expert might have testified in this case. And in looking at the court's ruling, it clearly understood what the limitations were of having viewed the picture afterwards. And there's nothing that the expert would have said that really wasn't already said otherwise and that would have changed its mind. The split of legal authority you referred to, is it to a legal question? I mean, part of what has confused me here is that the nature of the relationship between the hash value and actually viewing the image seems to be what they're talking about. And I don't understand that to be a legal question. I think the legal question is whether opening the document or opening the file leads to a substantial expansion. It has certainly legal implications. But the question is to the equivalence between the hash value and looking at the photo itself. And I confess I've spent more time than I want to care to acknowledge trying to figure this out because I'm not native to this world. That sounds like essentially a factual question as to which courts have maybe landed on different conclusions in establishing the legal implications of it. I think as far as it, from where I stand, it not being so much a factual question is because all these situations are kind of lining up the same. So usually in a Fourth Amendment claim there can be a multitude of facts that can influence the outcome. Here the courts that have looked at this, they've all been pretty much the same where there's been an initial designation of an image. It's assigned a hash or a fingerprint value. That value is found in somebody else's file and therefore that designation applies to that particular image. And so as far as there being an... You don't need, I mean the argument over really is you get something more. Do you establish the legal standard you have to establish if you actually have somebody look at this particular picture? And I think where the courts have parted ways is there are some courts that say yes, when you look at these images and you find that something more, whether it be time, date, circumstances, the victim, that constitutes an expansion. Whereas other courts have found no, just the very fact that it has matched to that designation of child pornography, it doesn't constitute a substantial expansion. So I think that the point is that the expert here, although he might have gone into more detail about those things, the court in this case, the state court, several of the circuit courts have all come to the conclusion that no, just the fact that we know that this is child pornography, that's sufficient. And then any additional information that is received that's not an expansion of the scope of the initial private search. Could an expert have spoken, and again I'm betraying my own ignorance, could an expert have spoken to the question of the level of reliability of the hash value? You've talked about A1, that's simpler to remember than the other numbers, so I'll use that. Can we take it to the bank that A1 is going to lead us to a photo that constitutes child pornography without fail? And that was one of the arguments that the defense made down below, that they said that we don't know who's making this A1 designation. And I believe that counsel had said it could have been a summer intern, for all we know, who had made that designation. Now the Google declaration indicates otherwise, that these are people who are well-trained in federal standards. Do we have any record? I mean, does anybody look backwards? I guess it wouldn't be government agents, it would have to be Google. Does Google have proof of a scientific nature saying we've labeled 1,000 photos A1, and we looked at those photos, and they all constitute child pornography? That was not a part of this record, and I'm not aware one way or another if that exists. But given the Google declaration in this case saying that their employees are trained under federal standards in order to identify this, that was sufficient for the court. And since we are on an IAC claim as to whether or not counsel properly litigated this hearing, counsel did make that very argument that said that there may not be a reliability for that initial designation. But that's not something that the defense expert would have spoken on, at least not to my recollection of what was contained in his declaration. It was purely what else could this image have shown. But to that point as well, there was a lot before the court, not only from the expert, but also from the arguments and the reply brief from counsel indicating much of the facts that Roloff had said. Mr. Boyce had indicated in his reply brief that the agent had opened and viewed the files, which Google had not done, which was also part of the Google declaration, and had exceeded the scope of the search. He also, in the reply brief, indicated that the hash value is not the equivalent of the image, and when the agent opened the attachment, he would have been fully apprised of its contents, whatever they were. So the arguments were before the court. Mr. Boyce did seem to understand the technology involved, and although the cross-examination may not have gone flawlessly, he was able to elicit all the points that he needed to make to show that there was much more to this picture than just the hashing technology. Now, with respect to prejudice, first and foremost, the trial court made its ruling on two different grounds, which were alternative in nature. The first ground, it did find that Mr. Wilson did not have a reasonable expectation of privacy, and that had nothing to do whether or not scope of the search was expanded, has nothing to do with the hash values. So there was this alternative finding, and although I believe in Mr. Wilson's briefing, he indicated that was something that the prosecution had conceded, I just wanted to clarify that the prosecution did concede that he had a subjective expectation of privacy in the files, but not a reasonable expectation of privacy in the files. So we have those two different rulings for which the expert testimony would not have made any difference. Additionally, as I discussed, the cross-examination of the expert adduced all the salient points that the expert declaration in this case set forth. If we look at the trial court's ruling, although some of the briefing by my friend on the other side of the aisle seems to suggest that the trial court was confused, it was absolutely not. It noted we have the A1 classification, which meant that somebody had found that picture to be an image of a prepubescent child engaging in sexual activity, that it was assigned the hash value, that hash value is found in Wilson's files, and those were the files that were turned over to the authorities. So the court clearly had a very thorough understanding of the technology involved, but simply just made a decision based on the U.S. Supreme Court case, which is, you know, shown to be the subject of a conflict among circuits of whether or not that actually viewing the files was an expansion of the search. So I would say that under these circumstances, the California Supreme Court's denial of this claim was not contrary to or an unreasonable application of United States Supreme Court authority. The district court properly found as such, and we would request that the district court's decision be affirmed, and unless there further questions on this issue or any other, I am prepared to yield the remainder of my time. Thank you. Thank you. Okay. A few points. We've talked a lot, my colleague just talked a lot about trial counsel's arguments. He made this argument in his reply brief. He made that argument in his reply brief. That whole point actually inures to our benefit, because arguments of counsel are not evidence, and the whole point is he did not call an expert, so he had no evidence to back up these arguments. That shows the deficiency and the prejudice. There was a lot of talk about this A1 classification. So let's read what this court has already said about that and rejected the very argument you just heard. Quoting again, Google's characterization of Wilson's email attachments as A1 functioned as a label for the images in the same way that the boxes describing the films in Walter suggested that the images on the films were obscene. The A1 labels, in fact, provided less information about the images' contents than did the boxes in Walter, which had explicit description of the contents of the film. The A1 labels, in contrast, specified only the general age of the child and the general nature of the act shown. There's no statistical evidence, Judge Clifton, as to the extent to which Google's A1 classifications are accurate at all. There was a point made by opposing counsel that the cross-examination, you know, was not artful, but, you know, basically did the job. No, it didn't. We know that it didn't because none of the information that's in this court's Wilson opinion, that's in Roloff's declaration, was before the court. We heard that the California courts firmly understood the technology, just like the California court of appeals. I've quoted it once, I'll quote it again. It's just dead wrong. Because the assigned numerical values or digital fingerprints are representative of the contents depicted in the photographs themselves, the government gained no new material information by viewing the images. That is objectively wrong as a scientific fact. They thought the images somehow were representative of the contents of the photos. That's the language they used. That is wrong. I think this all comes, it was apparently not wrong in this case. Why do we, why do we take it to be wrong? It was wrong in this case. Why was it wrong in this case? Because a hash value is not representative of the context depicted in the photographs themselves. Were the photographs themselves here child pornography? Yes. Well, so it wasn't wrong in this case, if in fact what they inferred from the hash value was that it was child pornography, and it was child pornography. I understand your point, but that's, it's a different point. It's a different point, but it's not irrelevant. I mean, I'm still struggling to figure out, and maybe I termed it in terms of reliability, but could they take it to the bank if they had an A1? And you're telling me no, when I'm saying what demonstrates that it's not something you can take to the bank? If you told me this statement is wrong, what proves that it's wrong? Judge Thompson, right? You can't, the, look at the search warrant in this case, which everybody agreed, both the district court and this court, that if you took out the subsequent information and just had the hash information, wouldn't have established probable cause. What happened? So the agent Thompson had the hash value, then opened it. What he used in the, in the search warrant was the contents, the information he learned from opening the file. He couldn't have just said, there's a hash match A1. He said, in this, he did, the descriptions that you just heard, those came from opening the file. Judge Berzon's opinion deals with this specifically. You couldn't have just used the hash value. You needed to open the file. She talks about the world of difference between what he knew before opening the file and what he knew after opening the file. Can you wrap up? Yes. Okay. So I think we, I think, I was just sitting there and this is what I could think. If this court, I think we can narrow it down to this very thing. If Roloff had testified and put in all of the information that's in Judge Berzon's opinion, might the trial court have come to a different conclusion? That's the question for this court. If the answer is yes, we win. Thank you. I think we have your argument. The case of Wilson v. Gamboa is submitted. And the court for this session stands adjourned. All rise. This court for this session stands adjourned.
judges: CLIFTON, IKUTA, LEE